UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                                 Case No. 06-51564

    ROBERT CLOUD,                                 Chapter 13

              Debtor.                                     Honorable Walter Shapero
_____/

**<u>OPINION IN CONNECTION WITH FEE APPLICATION OF DEBTOR'S ATTORNEY</u>**

       Debtor's attorney ("Applicant") filed an application for fees in this Ch. 13 case which was commenced on August 23, 2006, and dismissed on January 8, 2007, prior to confirmation pursuant to the terms of an order which required the Debtor to have been current in plan payments by a certain date, failing which the case would be dismissed. Applicant seeks $4,673.00 in fees representing some 22.6 hours of attorney time at a rate of $190 per hour and 1.7 hours of non-attorney time at a rate of $90 per hour. Debtor, appearing in pro per, has objected to the application arguing in the alternative that either (1) the correct fee amount should be $1,500; or (2) no fees at all should be awarded because the circumstances of the case were such that it should not have been filed in the first place and thus he received poor or wrong advice, rendering the time spent non compensable. Debtor does not take issue with the various time entries supporting the Application, his objections being limited to the indicated objections.

       Debtor had filed a previous case (#06-45155) on April 25, 2006, which was dismissed prior to confirmation on July 12, 2006. Applicant also represented Debtor in that case and the filed 2016(b) statement in that case was identical to the one filed in this case. After dismissal of that prior

1

case, Applicant did not seek any additional fees over and above the $500 initially received as stated on the 2016(b) statement.

The 2016(b) statement form itself used in this case by its terms provides for agreed compensation to be either (1) a stated flat fee; or (2) payment of a stated retainer amount against which the attorney would bill at a specified hourly rate, with the Debtor agreeing to pay all court approved fees exceeding the amount of the retainer. As noted, in this case, the flat fee option was elected and the form filled in to provide for a $2,000 "Flat Fee" of which $500 was paid, leaving a balance of $1,500. No stated amount of any retainer was filled in nor was there set forth any stated hourly rate. No other fee agreement was entered into by the parties. Applicant interprets that 2016(b) statement filled in as indicated, coupled with what Applicant states is local custom and practice in light of being required to file an application for fees, as giving Applicant the <u>option</u> to either (a) accept the stated flat fee, or (b) if required (or desiring) to file an application for fees on an hourly rate basis, he can do so and with no cap on what those fees might be. Put differently, Applicant argues if a fee application is, or needs to be filed, the fact of that filing vitiates what may otherwise be a clearly stated flat fee agreement. Applicant is incorrect in his view. In this Court's view, unless the 2016(b) statement clearly states otherwise (and this one did not do so) if a flat fee is the method of compensation chosen, that is generally the <u>maximum</u> the attorney can obtain whether or not an application for fees is, or needs to be, filed. If the attorney in such a case is required to file a fee application, it is likely because the trustee or other interested party, or the Court believes that something less than the indicated flat fee is the proper fee in the case and the exact amount thereof should only be determined by the application process. This most often occurs in cases dismissed prior to confirmation, though it can occur in other situations as well. Furthermore, even if Applicant had

2

the option he argues for in this case, the failure to have set forth in the 2016(b) statement the specific hourly rate to be charged would be fatal to the claim on an hourly basis in any event, particularly where as here, the 2016(b) statement is the entirety of the fee agreement. If an attorney is concerned about the possibility that the time that might be spent would be beyond what might be fairly encompassed by a specifically stated flat fee, it is up to the attorney to make that fact clear in the 2016(b) statement and any other fee agreement. The statement must clearly set forth the retention of any option to charge on a time spent basis, which might amount to more than the flat fee indicated, and/or, to clearly state, if that is what the agreement is, that the stated "Flat Fee" amount would be a minimum amount due, covering specified services, and the attorney could ask for additional amounts over and above that minimum, for other specified services, on a time basis, setting forth the hourly rates to be charged by all who will render compensable services. Alternatively the statement could clearly and simply say the attorney will charge for all services relating to the bankruptcy on an hourly basis at stated rates. Where, as here, the filed 2016(b) statement merely opts for the flat fee arrangement, and the agreement by its terms provides for nothing more, the stated flat fee is the maximum amount that can be awarded because that is what was agreed to.

As to Debtor's second defense to the application, he testified that he had outstanding federal income tax liabilities in substantial amounts for the years 1998 through 2004 inclusive, apparently by reason of having not filed tax returns for those years (or not having paid the correct amounts due). Debtor admitted liens had been filed in connection with those tax claims before the filing of the prior case in 2006. He stated that he had an Offer and Compromise with the IRS then pending with reference to that liability; that he received advice the Offer and Compromise possibly could not be finalized because of the pending bankruptcy; and that had he known that before he filed, he would

3

06-51564-wsd    Doc 38    Filed 03/22/07    Entered 03/22/07 16:03:57    Page 3 of 6

not have filed since his only real creditor was the mortgage holder on his home and he could have (and recently has) dealt with that liability (on a forbearance basis) without having to file for bankruptcy. Therefore, he argues, the bankruptcy filing was ill advised in the first place, and Applicant should not be paid any more than he already was. It should be noted that in his 2006 filing, Debtor did not list the IRS as a creditor at all, much less a secured one, and did not treat that liability in the plan, and, in answer to the question on the Statement of Financial Affairs requiring he state whether or not he was a party to any administrative proceedings within one year of that filing (the pendency of an Offer and Compromise clearly being such) he said "None." And the same non-disclosure was true with reference to his schedules and the Statement of Financial Affairs and proposed plan in this case. The IRS in fact filed a $170, 738.70 combined unsecured, secured and priority claim in this case, on or about November 15, 2006.[1] That claim asserts liability for income taxes, interest and penalties for the years 1999 through 2004, plus taxes and interest due for the year 2005. Attached to the claim are copies of tax liens filed in 2001, 2004, 2005 and 2006, the last one having been recorded in January 2006. His statement that his attorney never asked him the right question about such rings hollow in light of the facts that (a) the schedules themselves and their instructions (signed under penalty of perjury) make eminently clear what has to be disclosed - i.e., all liabilities, contingent, contested or otherwise; and (b) Debtor is no stranger to the bankruptcy process, having, in addition to the 2006 case, filed a chapter 13 case in 2002, which was dismissed before confirmation (not after confirmation as his cover sheet in this case states) and a chapter 7 case in 1998 in which he obtained a discharge. While attorneys do have responsibility to ask searching

---

[1] The previous case had been dismissed before the IRS claim filing deadline and no such claim was filed in that case.

4

questions to ferret out the facts, it is primarily the debtors responsibility to fully and completely disclose in the first instance. A debtor, particularly this Debtor, who is a mortgage broker by trade and not unsophisticated, cannot excuse the lack of such full disclosure on the grounds asserted, for instance, that the bankruptcy was intended to deal only with his mortgage default, and any other liabilities were not particularly relevant. Furthermore, the evidence may be that Applicant was sought out on the eve of mortgage foreclosures when available alternatives, including negotiation of any forbearance agreements or proper consideration of alternatives to bankruptcy, were severely time limited.

While it does not make any difference in the outcome in this case, it is worthwhile noting there was some indication emanating from Applicant during the evidentiary hearing, that as a chapter 13 debtor's attorney, he should not be expected to deal with IRS matters or negotiate forbearance agreements. Make no mistake, if a debtor discloses or the attorney is aware of the salient facts, a debtor's attorney does have some responsibility to delve into tax issues for instance, and at least determine what the issues are, what effect they might have on the contemplated or existing bankruptcy, and any proposed plan and its confirmation, and whether or not a tax specialist needs to be brought in to fully effectuate the bankruptcy consultative process. As to forbearance agreements or the like, in this Court's view, given the material role that mortgage and/or security agreement defaults play in most consumer bankruptcies, any competent chapter 13 bankruptcy attorney ought to be able to consider the possibilities of, and negotiate and consummate, such agreements if appropriate and available incident to a bankruptcy case, or indeed, in lieu of filing one, providing, as noted, the facts come to the attorney's attention in sufficient detail and in time to enable the attorney to address such before the adverse affects of not promptly filing might come into play.

By reason of the foregoing and for the reasons stated, the application for fees is granted in part and Applicant is awarded fees in the amount of $1,500, no costs being sought. Applicant shall submit an appropriate order consistent with this opinion.

**Signed on March 22, 2007**

                                                   **/s/ Walter Shapero**
                                          **Walter Shapero**
                                          **United States Bankruptcy Judge**